UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,          Cr. No. 17-20787

          v.          District Judge Linda V. Parker

JEROME WILSON,

          Defendant.

_____/

## RENEWED
## MOTION FOR COMPASSIONATE RELEASE

This Court is by now well aware of the particular dangers of the infectious disease COVID-19 to incarcerated people. Since the start of the pandemic, over 9,200 federal prisoners have been infected, and although more than 5,000 have recovered, at least 97 have died. This includes 3 prisoner deaths, and at least 5 active cases, at Jerome Wilson's place of incarceration, FCI Milan. Yet despite these inmate deaths, only 260 prisoners have been tested for the virus at Milan, less than 20% of the prisoner population. https://www.bop.gov/coronavirus/.

Extraordinary and compelling reasons exist for Wilson's release because he suffers a respiratory infection, heart disease (with a history of heart attacks), and he takes immunosuppressant medication for severe pain. As documented in his presentence report, he "has bullets embedded in his bowels and one-eighth of an inch

1

from his heart." PSR ¶ 53. He has served more than 70% of his sentence and is eligible for home detention on March 10, 2021, just over seven months from now. He has not incurred any discipline during this period of incarceration.

Wilson previously petitioned this Court for release pro se, but had not yet exhausted administrative remedies. Appointed counsel thus withdrew the motion with Wilson's consent and assisted him in exhausting his remedies. (R. 29, Notice, PgID 124.) Thirty days now have lapsed since the warden received Wilson's request for release. (Ex. 1, Admin. Request.) In light of the potentially dire consequences if Wilson remains in prison, this Court should exercise its authority to grant relief under 18 U.S.C. § 3582(c)(1)(A)(i) by releasing him.

## I.    Procedural History

In August 2017, ATF agents searched Wilson's residence and found a gun and a small amount of suspected cocaine and marijuana. PSR ¶ 10. In January 2018, Wilson pleaded guilty to being a felon in possession of a firearm. PSR ¶ 6.

Wilson faced a guidelines range of 57 to 71 months, and this Court imposed a sentence at the low end of that range. (R. 84, Judgment, PgID 84.) The presentence report documented bullets in Wilson's bowels and near his heart, and that he took Motrin for back pain for a fall from scaffolding in the late 1990s. PSR ¶ 53. At sentencing, his attorney emphasized that Wilson did not have a history of violent

behavior, and raised a concern that, because of Wilson's age, any sentence "could potentially be a life sentence." (R. 21, Sent. Mem., PgID 74–75.)

In May 2020, Wilson moved for compassionate release, citing health problems with his heart, head, and back. (R. 23, Pro Se Motion.) Through counsel, Wilson asked BOP officials for compassionate release on June 15, 2020, citing his risk of serious illness from COVID-19, and receipt of the request was confirmed on June 17, 2020. (Ex. 1, Admin. Request.)

## II.    Legal Standard for Compassionate Release

In December 2018, the First Step Act amended 18 U.S.C. § 3582(c)(1)(A)(i), to permit sentencing judges to grant a reduction of sentence, after considering the § 3553(a) factors, if the Court finds "extraordinary and compelling reasons warrant such a reduction," and "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission."

As the BOP faces a rapidly escalating health crisis because of COVID-19, several courts in this district have recognized that the pandemic, for an offender with pre-existing health problems rendering them vulnerable to severe illness from COVID-19, is an extraordinary situation warranting release under § 3582(c)(1)(A)(i). *See, e.g., United States v. Jelinek,* No. 15-20312, 2020 WL 3833125, at *1 (E.D. Mich. July 8, 2020) (Parker, J.); *United States v. Nazzal,* No. 10-20392, 2020 WL 3077948, at *3 (E.D. Mich. June 10, 2020) (Lawson, J.); *United*

3

*States v. Rahim,* No. 16-20433, 2020 WL 2604857, at *2 (E.D. Mich. May 21, 2020) (Edmunds, J.)*; United States v. Loyd,* No. CR 15-20394-1, 2020 WL 2572275 (E.D. Mich. May 21, 2020) (Tarnow, J.); *United States v. Agomuoh,* No. 16-20196, 2020 WL 2526113, at *1 (E.D. Mich. May 18, 2020) (Levy, J.); *United States v. Pomante,* No. 19-20316, 2020 WL 2513095 (E.D. Mich. May 15, 2020) (Hood, C.J.).

### III.    Exhaustion of Administrative Remedies

Section 3582(c)(1)(A)(i) gives this Court authority to grant relief to a person requesting compassionate release after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." Through counsel, Wilson requested compassionate release from BOP on June 15, 2020, with receipt confirmed June 17, 2020, so 30 days have lapsed, and this motion is properly before the Court. (Ex. 1, Admin. Request.) No response has been received from warden.

### IV.    Extraordinary and Compelling Reasons Warrant Release

This Court may order Wilson released if "extraordinary and compelling" reasons exist. Here, Wilson's pre-existing health conditions, combined with the global pandemic, warrant compassionate release.

### 1.   Release is consistent with the policy statements

Wilson's release is consistent with the Sentencing Commission's policy statements. Wilson's health condition, combined with this pandemic, "substantially diminishes the ability of the defendant to provide self-care within the environment

4

of a correctional facility and from which [he] is not expected to recover." U.S.S.G. § 1B1.13, cmt. n. 1(A)(ii). Courts have found release in these circumstances consistent with this policy statement. *See, e.g., United States v. Reddy,* No. 13-CR-20358, 2020 WL 2320093, at *5 (E.D. Mich. May 11, 2020); *United States v. Amarrah,* No. 17-20464, 2020 WL 2200008, at *6 (E.D. Mich. May 7, 2020).

Wilson also presents "Other Reasons" under U.S.S.G. § 1B1.13, cmt. n. 1(D), warranting compassionate release, because the COVID-19 pandemic is devastating prison populations, and Wilson is subject to particular danger because of health conditions. *See, e.g., Miller v. United States,* No. CR 16-20222-1, 2020 WL 1814084, at *3 (E.D. Mich. Apr. 9, 2020).

### 2. Wilson's health places him at high risk of death or serious illness.

Wilson is 57 years old, which places him at increased risk compared to younger inmates. CDC, *Older Adults,* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html. His prison medical records also show that he suffers three medical conditions making him vulnerable to COVID-19.

***One: Heart Problems.*** The CDC recognizes that people with serious heart conditions are at particular risk from COVID-19. CDC, COVID-19, *Serious Heart Conditions and Other Cardiovascular and Cerebrovascular Diseases*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#serious-heart-conditions. "Having other cardiovascular or

5

cerebrovascular disease, such as hypertension (high blood pressure) or stroke, may increase your risk of severe illness from COVID-19." *Id.*

Wilson has a history of heart attacks. His BOP records document that he had two heart attacks in 2016. (Ex. 3, Note 2/26/20.) He also cannot take certain pills recommended for his heart because it causes him serious muscle pain, called myalgia. (*Id.*; Ex. 6, Medication List.) This makes treatment difficult, especially in prison, and this history places him at increased risk from COVID-19. People with myocardial injury have significantly worse outcomes with COVID-19 than those without: In one study, more than 51% of people with myocardial injury died after being hospitalized from COVID-19, compared to just 4.5% who died without myocardial injury. Dr. Robert Bonow, *et al., Association of Coronavirus Disease 2019 (COVID-19) With Myocardial Injury and Mortality*, 5(7) JAMA Cardiol. 751 (2020), https://jamanetwork.com/journals/jamacardiology/fullarticle/2763844. Another study found a 59.6% mortality rate for people hospitalized for COVID-19 with previous heart injury, compared to just 8.9% for those without heart injury. *Id.*

Furthermore, Wilson's heart problems are not just historic. He continues to complain of sharp pains in his chest. (Ex. 7, Health Note, Jan. 3, 2020.) He expressed this concern in a note on January 3, 2020, and relayed to counsel that he continues to suffer chest pain even in July 2020. His ongoing heart problems, and the severe

risk he faces from COVID-19 as a result of those problems, are extraordinary and compelling reasons for his release.

**Two: Respiratory Infection.** Wilson's health summary from BOP lists a current problem with an "acute upper respiratory infection." (Ex. 4, Medical Problems.) This has been a documented "current" health problem for Wilson since April 2009, more than 10 years. (*Id.*) Based on his 2019 and 2020 records, the exact nature of this infection is not apparent, but it *is* clear that this infection affects Wilson's respiratory system and remains a problem for Wilson in 2020.

Courts have recognized that a history of respiratory infection may be an "extraordinary and compelling" circumstances for release in the midst of this pandemic—most notably for those with latent tuberculosis infections. In at least two cases in this district, courts have made the point that, even if a person is not *currently* suffering an acute respiratory infection, past damage to a person's lungs creates a serious risk from COVID-19 because it is a respiratory illness. *United States v. Watkins,* No. 15-20333, 2020 WL 4016097, at *3 (E.D. Mich. July 16, 2020) ("Those with latent TB still may have lingering pulmonary damage from their active infection, and they may still have reason to fear any immunocompromising second infection that could pave the way for their latent TB to become active."); *United States v. Atwi*, No. 18-20607, 2020 WL 1910152, at *5 (E.D. Mich. Apr. 20, 2020) ("[T]he risks to someone with a co-infection of TB and COVID-19 'are readily

apparent,' as both are respiratory diseases that affect the lungs." (citation omitted)).

There also is evidence that COVID-19 may progress more rapidly and severely in

people with underlying lung infections. *See Doe v. Barr*, No. 20-CV-02141-LB,

2020 WL 1820667, at *5 (N.D. Cal. Apr. 12, 2020) (granting release to immigration

detainee with latent tuberculosis). Wilson's documented, continued problem with a

respiratory infection is another reason to grant him release.

     ***Three: Immunosuppressant medication.*** As documented in his presentence

report, and his BOP records, Wilson has ongoing complications from a gunshot

wound (GSW) that left bullets lodged in his body. (PSR ¶ 53; Ex. 3, Note 2/26/20.)

This has caused him chronic pain for "at least 20 years." (Ex. 3, Note 2/26/20.) His

pain "is intermittent," but lately has occurred "more often and intense." (*Id.*) It "hurts

with prolonged sitting, standing or lying down." (*Id.*)

     Because of the severity of his pain, medical staff prescribed Wilson five

tablets of prednisone per day, for three days, starting in late April 2020. (Ex. 5,

Health Encounter 4/27/20; Ex. 6, Medication Summary.) Prednisone is a

corticosteroid that works by suppressing a person's immune system to limit the

inflammation that causes pain. Thus, the CDC recognizes the "prolonged use of

corticosteroids" or "use of other immune weakening medicines," as a risk factor for

death or serious illness from COVID-19. *See* CDC, *People Who Need Extra*

*Precautions* (July 17, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-

extra-precautions/people-with-medical-conditions.html#immunocompromised-state. And courts have granted compassionate release to individuals who have used the medication in light of their risk of illness from COVID-19. *United States v. Gutman*, No. CR RDB-19-0069, 2020 WL 2467435, at *2 (D. Md. May 13, 2020) (granting release to inmate at FCI Cumberland suffering from hypertension and multiple sclerosis, for which he took oral methylprednisolone, a similar corticosteroid); *United States v. Robinson*, No. 18-CR-00597-RS-1, 2020 WL 1982872, at *2 (N.D. Cal. Apr. 27, 2020) (granting release to inmate at Lompoc with hypertension and who had used prednisone for psoriasis); *United States v. Sanchez*, No. 18-CR-00140-VLB-11, 2020 WL 1933815, at *2 (D. Conn. Apr. 22, 2020) (granting release to inmate at MDC Brooklyn who had used prednisone for lupus). Although Wilson's use of prednisone may not be as prolonged as in some of these cases, it is very recent, and especially in combination with his other conditions, it raises serious concerns about his vulnerability to COVID-19 illness.

**Combination of conditions**. The CDC states: "The more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19." CDC, *People of Any Age with Underlying Medical Conditions* (2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. As Wilson has shown, he has more than one condition that puts him at an increased risk, and even if these "conditions do not independently and perfectly

9

fit the definition of severity, as outlined by the CDC, all of his conditions compounded still place [the petitioner] in a much more vulnerable position than a healthy person, if he were to get COVID-19." *Loyd*, 2020 WL 2572275, at *3. Thus, because of Wilson's combination of advanced age, heart problems, respiratory infection, and use of corticosteroids for pain management, this Court should find that he presents "extraordinary and compelling" reasons for release under § 3582(c)(1)(A)(i).

### 3.  Conditions at FCI Milan warrant relief.

FCI Milan has had more than 100 confirmed cases of COVID-19 between staff and inmates, and three inmates have died there. Right now 5 inmates and 1 staff are recorded as currently positive for the virus.

The relatively lower number of current positive cases should not cause this Court to view the situation at Milan as any less dangerous. As Judge Lawson has explained, "[d]espite the government's attempt to minimize the status of the pandemic crisis at FCI Milan, it is undisputed that the progress of the outbreak is ongoing, and the facility still has active inmate infections." *Nazzal*, 2020 WL 3077948, at *4. Importantly, BOP statistics show that, despite the deaths and positive cases, only 260 people have been tested for the virus at Milan, with 87 of those tests coming back as positive COVID-19. https://www.bop.gov/coronavirus/. That means less than 20% of the prison population has been tested, and of those tested, more

10

than 33% of have been positive for the virus. Despite the serious spread of the virus at Milan, as of May 29, 2020, the warden had denied all 235 requests for compassionate release received. *United States v. Snell,* Cr. No. 16-20222, ECF No. 422, Gov. Suppl., PgID 3279 (E.D. Mich. May 29, 2020).

As another court recently explained, "[a]s evidenced by recent infections among prisoners in the high-risk population, the risk of contracting COVID-19 in FCI Milan remains a daily threat, and that is entirely out of [the petitioner]'s control." *United States v. Kirschner*, No. 110CR00203JPHMJD, 2020 WL 4004059, at *3 (S.D. Ind. July 15, 2020) (granting compassionate release). Wilson cannot socially distance at FCI Milan. He lives in an open dormitory style living area with more than 100 other prisoners. *See United States v. Berry*, No. 09-CR-90-JPS, 2020 WL 4001932, at *1 (E.D. Wis. July 15, 2020) (describing these conditions and granting release). Prisoners sleep with two-people per open-air cubicle, surrounded by low-rising partitions. They are issued a limited number of masks and must wash them themselves (with soap from commissary) or risk mixing them with other prisoners' laundry. They line up for food and medicine, making social distancing impossible. They must share telephones, toilets, and showers with approximately 60 other inmates. *Id.* "Needless to say, Defendant's current living conditions at FCI Milan heighten his risk of contracting COVID-19." *Id.*

11

FCI Milan also has had one of the highest levels of staff infections. Laura Cassels, *At one federal prison, more than half of inmates infected with COVID-19; across the country, 33 inmates dead*, Florida Phoenix (May 1, 2020), https://www.floridaphoenix.com/2020/05/01/at-one-federal-prison-more-than-half-of-inmates-infected-with-covid-19-across-the-country-33-inmates-dead/. The government may argue that the BOP has been taking extraordinary precautions, but those precautions have not worked at FCI Milan, where at least one officer reports he was told to work despite his positive test for the virus. Am. Fed. of Gov. Employees, *A BOP Officer Contracted Coronavirus. He Was Told to Return to Work ASAP*, May 4, 2020, https://www.afge.org/article/a-bop-officer-contracted-coronavirus.-he-was-told-to-return-to-work-asap/.

Furthermore, courts have recognized the urgent need for release of people with pre-existing conditions even when there are *no* confirmed cases. *United States v. Amarrah*, No. 17-20464, 2020 WL 2220008, at *3 (E.D. Mich. May 7, 2020). "Zero *confirmed* COVID-19 cases is not the same thing as zero COVID-19 cases." *Id.* at *6. "This disease spreads asymptomatically, which means the Court and the prison system can take no comfort in a lack of confirmed cases, and all parties should be deeply concerned by the lack of universal testing of inmates and staff." *Id.*

This Court should find that Wilson's situation rises to the level of extraordinary and compelling circumstances warranting release.

### 4.  The § 3553(a) factors favor release.

Wilson recognizes the severity of his criminal history, but respectfully, releasing Wilson at this point will still serve the purposes of sentencing. Notably, Wilson has served more than 70% of his sentence taking good time into account. (Ex. 8, Sentencing Computation, at 4.) He is eligible for home detention on March 10, 2021, just over seven months from now. (*Id.* at 2.) Any benefit to keeping Wilson incarcerated for another seven months is far outweighed by the risk of his serious illness or death while incarcerated.

Wilson will have a supportive community if released. He plans to live with his father, Donald Wilson. Counsel has spoken with Donald Wilson, who wholeheartedly supports his son's release. Wilson's father speaks with him every week, and recognizes his son's rehabilitation and would welcome him home. Wilson's mother, Doretha Wilson, and his girlfriend of many years, Stacey Beaugard, also support his release and will assist with his return to the community. In addition, Wilson keeps in touch every week with his children.

Wilson's institutional conduct supports his request for release. He has worked while in custody as an orderly, food service, mechanical services, HVAC, and landscaping. (Ex. 2, Progress Report.) His progress report notes that the "skills he's learned while employed in prison may be useful while seeking employment after release." (*Id.* at 1.) He has no disciplinary history during his most-recent period of

13

incarceration. His disciplinary history in BOP dates back to 2008, during a previous time in custody. (*Id.* at 2.)

Wilson knows his health places him at risk from COVID-19, and he is unlikely to jeopardize his health by violating terms of supervision if released. In these circumstances, the Court should not hesitate to grant him compassionate release.

## Conclusion

Jerome Wilson respectfully requests compassionate release.

Respectfully Submitted,

s/Benton C. Martin
FEDERAL COMMUNITY DEFENDER
613 Abbott St., Suite 500
Detroit, MI 48226
EMAIL: Benton_Martin@fd.org
PHONE: 313-967-5832

Dated: July 20, 2020

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        Cr. No. 17-20787

        v.        District Judge Linda V. Parker

JEROME WILSON,

        Defendant.

_____/

## **CERTIFICATE OF SERVICE**

    I certify that on July 20, 2020, I filed the foregoing paper with the through the court's electronic docketing system, which will send notification to opposing counsel of record.

*/s/Benton C. Martin*

15